Ferko v. NASCAR                                    CV-03-409-JM  10/10/03

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Francis Ferko and Russell Vaughn, as
Shareholders of Speedway Motorsports, Inc.

    v.                                        Civil No. 03-409-JM
                                          Opinion No. DNH 03NH169
National Association of Stock Car Auto
Racing, Inc., International Speedway Corporation
and Speedway Motorsports, Inc.


**O R D E R**


Plaintiffs seek production of detailed financial information of New Hampshire International Speedway, Inc. ("NHIS") with regard to the two NASCAR Winston Cup Series races at its Loudon, New Hampshire racetrack.  NHIS objects on the basis that the documents are highly confidential and are not relevant.

Background

The underlying suit involves a claim by plaintiffs, shareholders of defendant Speedway Motorsports, Inc. ("SMI"), for lost profits of SMI against International Speedway Corporation ("ISC"), SMI and the National Association of Stock Car Auto Racing, Inc. ("NASCAR").  Plaintiffs allege a breach of contract and antitrust violations by NASCAR for its refusal to sanction a

second race in its Winston Cup Series[1] at SMI's Texas Motor Speedway.

SMI is a New York Stock Exchange listed company which owns six tracks that host NASCAR Winston Cup events. Nine of the thirty-six (25%) Winston Cup Series races for points[2] are held at SMI-owned tracks. Three of its tracks have two Winston Cup races each and the Las Vegas, Infineon and Texas Speedways each have one Winston Cup Series race.[3]

The defendant NASCAR is the sanctioning entity for Winston Cup, Busch and Craftsman Truck Series races. It was started and is controlled by the France family. According to SEC filings, NASCAR and the France family are connected to ISC which operates twelve race tracks including the following tracks which together hold Winston Cup races: Daytona - 2 Cup races; Darlington - 2 Cup races; Talladega - 2 Cup races; North Carolina - 2 Cup races; Richmond - 2 Cup races; Michigan - 2 Cup races; Chicagoland - 1 Cup race; Kansas - 1 Cup race; Phoenix - 1 Cup race; Homestead-

---

[1]NASCAR also sanctions the Busch Series and Craftsman Truck Series which are not at issue.

[2]One of its tracks also hosts the non-point "All Star" NASCAR "Winston" races in May.

[3]Texas Speedway also features open-wheel Indy-car, IRL racing.

Miami - 1 Cup race; Michigan - 1 Cup race; Watkins Glen - 1 Cup race; and California - 1 Cup race.  ISC-owned tracks host 46% of Winston Cup races.

NHIS is a family-owned, privately held corporation which operates the New Hampshire International Speedway in Loudon, New Hampshire.  It holds two Winston Cup Series races each year.

The entities which host two Winston Cup Series races at a particular track, the number of such tracks each operates and the number of other tracks with Winston Cup races operated by them are:

| Entity | # Tracks With 2 Races | # Other Tracks With 1 Race |
|--------|----------------------|----------------------------|
| ISC    | 6                    | 6                          |
| SMI    | 3                    | 3                          |
| NHIS   | 1                    | 0                          |

Of the three, NHIS is the only entity with only one track featuring Winston Cup races and the only family-owned and operated track.  ISC and SMI are both NYSE listed companies.

Plaintiffs seek production of documents from NHIS under a subpoena duces tecum served under Rule 45 of the Federal Rules of Civil Procedure.  Specifically, they seek:

> 7. Documents sufficient to show your
> itemized revenue, income, expenses, and costs
> for each NASCAR Winston Cup Series race held
> at New Hampshire International Speedway.

3

Document no. 1, Exhibit A, p.1.  NHIS objected on the basis of lack of relevance and of confidentiality of commercially sensitive financial information.

Discussion

Fed. R. Civ. P. 26(b)(1) provides, in part that "(p)arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ."  Fed. R. Civ. P. 45(c)(3)(B) provides that:

>     (B)  If a subpoena
>          (i) requires disclosure of . . .
>     confidential . . commercial information
>                    * * *
>     the court may, to protect a person subject to or
>     affected by the subpoena, quash or modify the
>     subpoena or, if the party in whose behalf the
>     subpoena is issued shows a substantial need for
>     the testimony which cannot be otherwise met . . .
>     the court may order . . . production only upon
>     specified conditions.

Fed. R. Civ. P. 26(c) authorizes protective orders for persons from whom discovery is sought.

Plaintiffs concede that the documents at issue are confidential commercial information.  Nevertheless, they assert that the documents are relevant and that they have a substantial need for them.  Plaintiffs' entire factual argument is summarized by them as follows:

4

> NHIS . . . is the only racetrack that
> provides recent, important insight into how
> (1) the addition of a second Winston Cup race
> affects the profitability of the first race,
> and (2) the profitability of the new second
> race compares to the profitability of the
> first.

Document no. 1, p.2. NHIS is correct. That statement by plaintiffs does not demonstrate relevance or substantial need. The burden to show a substantial need for relevant documents in the face of NHIS' claim of confidentiality is upon plaintiffs.

First, NHIS has provided its attendance figures and ticket prices for the relevant period. To the extent any information from NHIS is relevant it has thus been provided. Expenses in connection with such disparate tracks in different geographical locations under vastly different corporate organization and management are so obviously disparate and irrelevant that plaintiffs have studiously ignored them. The following are but a few comparisons which undermine plaintiffs' claim of relevance:

|  | NHIS | SMI |
|---|---|---|
| Geographic Location | New England | Texas |
| Seating Capacity | 93,278 | 150,061 |
| Track length | 1.058 | 1.5 miles |
| Location | Loudon, NH | Ft. Worth |
|   Population | 4,635 | 457,652 |
| Nearby City populations |  |  |
|   Concord | 38,318 | Dallas 1,188,580 |
|   Manchester | 106,180 |  |

5

| Ownership | Family | NYSE listed company |
|---|---|---|
| Number of tracks | 1 | 6 |
| Winston Cup Series races | 2 | 9 |

The differences in "marketing" a race at a track in rural New Hampshire and urban Texas are obvious. The disparity in the expense of maintaining tracks and facilities of such different length and type with such different track banking (12 degrees vs. 24 degrees) in such different climates is also apparent. Wages, ethnicity and cultural differences have not been addressed. The ownership and management are vastly different.

Plaintiffs have made no effort to demonstrate the relevance of a single type of financial information from NHIS. The fact that it got its second Winston Cup race date six or seven years ago is interesting but it certainly is not, in and of itself, a demonstration of any relevant evidence as to what the Texas Motor Speedway may anticipate if it got a second race.

In fact, a comparison of the profitability of tracks with one race versus two races where the demographics and tracks are similar is far more likely to provide relevant information. A comparison of the profitability of SMI's and ISC's urban tracks under the same or similar corporate organization are far more

6

relevant if anything is relevant.  The Presiding Judge, Judge Schell, has already ruled that the financial data of SMI's other tracks[4] have not been shown to be relevant.  Document no. 1, Exh. C.  Judge Schell's order is therefore a further support for the lack of relevance here.

Where, as here, it is well within plaintiffs' ability to extrapolate the Texas track's profitability there is no substantial need for the commercially sensitive financial records of a rural New Hampshire track.  Finally, the fact that SMI has made overtures to buy the Loudon track is justification for the concerns of NHIS.  As Judge Schell said:

> (t)he prejudice in requiring the Speedway to turn over sensitive business materials to a competitor (even though there is a Confidentiality Agreement in place) outweighs any relevancy and NASCAR's need for the information.

This derivative action on behalf of SMI is at least the equivalent of getting highly sensitive information into the hands of a competitor.

The motion on the record presented to me is wholly unsupported and, in fact, is so lacking in any factual

---

[4]Three of these tracks have two Winston Cup races each and two others have one each.

7

presentation that it verges on the frivolous.  The motion

(document no. 1) is denied.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: October 3, 2003

cc:     Stephen J. Dibble, Esq.
        Daniel A. Small, Esq.
        Gene R. Libby, Esq.
        R. Peter Taylor, Esq.